FILED

2003 NOV 24  P 3: 14

U.S. DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AARON BEN NORTHROP,
Plaintiff

                :

vs.                   :    NO. 3:02CV875 (AWT)

ELTON WILLIAMS and
RICHARD CRAMER, Defendants    :    NOVEMBER 24, 2003

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

The gravamen of the plaintiff's present lawsuit is that the defendant, Attorney Richard Cramer (hereinafter "defendant Cramer"), allegedly provided incompetent legal services to him as his court-appointed defense lawyer in connection with his federal prosecution for multiple felony narcotics violations.  Specifically, he claims that defendant Cramer failed to provide him with adequate information upon which to base his decision to enter a plea of guilty and, as such, induced him to involuntarily plead guilty to engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, for which he "may have no remedy to secure his release from prison."

However, the plaintiff is collaterally estopped from relitigating in the present action both the reasonableness of defendant Cramer's legal services and the voluntariness of his guilty plea, because the United States District Court for the District of Connecticut actually and necessarily determined those issues in its prior decision denying his Motion for Habeas Corpus, pursuant to

28 U.S.C. § 2255. In that Motion, as here, the plaintiff challenged both the effectiveness of defendant Williams' counsel and the voluntariness of his guilty plea. Upon a review of the entire record, particularly the transcript of the plea hearing, the District Court concluded that defendant Cramer's representation had been "admirable and competent" and that the plaintiff's claim that his plea was ill informed and, accordingly, involuntary, was "wholly incredible."

In the present action, the plaintiff attempts to challenge his conviction and sentence once more, by again contesting the effectiveness of his defense counsel and the voluntariness of his plea. However, because the habeas court actually determined both issues, because its decision was necessary to its judgment denying the plaintiff habeas relief and because that judgment was final, the plaintiff has failed to raise a genuine issue of material fact in the present action. Accordingly, defendant Cramer is entitled to summary judgment in his favor on the plaintiff's Third Amended Complaint.

## FACTUAL BACKGROUND

On March 11, 1993, three days into a federal criminal trial in which the Government presented twenty-five witnesses and offered approximately 280 pounds of marijuana into evidence, the plaintiff, Aaron Ben Northrop (hereinafter "the plaintiff"), opted to abandon his trial and change his plea to guilty. Third Amended Complaint, Statement of the Facts, ¶ 16; Northrop v. United States of America, 1998 U.S. Dist. LEXIS 677, *1 (Conn. 1998) (attached as Exhibit A). He pleaded guilty to: conspiracy to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846; engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §

848; making and possessing a bomb, in violation of 26 U.S.C. §§ 5861(c) and (f); and using interstate commerce facilities in the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958. Third Amended Complaint, Statement of the Facts ¶¶ 10, 16; Northrop, 1998 U.S. Dist. LEXIS 677 at *1. On October 25, 1993, he was sentenced to 50 years incarceration on the continuing criminal enterprise count, 10 years incarceration on each of the other counts, to run concurrently with the 50-years sentence, three years of supervised release and a special assessment of $250. Northrop, 1998 U.S. Dist. LEXIS 677 at *2. Following the entry of his judgment of conviction by guilty plea and sentence, the plaintiff began what has extended into ten-year effort to invalidate his plea and obtain a new jury trial via numerous direct and collateral attacks, each of which has been systematically denied, dismissed or otherwise unsuccessful. Third Amended Complaint, Statement of the Facts, ¶¶ 20, 23-26; Northrop, 1998 U.S. Dist. LEXIS 677 at *2.

On November 1, 1994, on direct appeal, the United States Second Circuit Court of Appeals affirmed both the judgment of conviction and the sentence without decision. United States v. Northrop, 40 F.3d 1238 (2d Cir. 1994)(attached as Exhibit B). Thereafter, in April, 1997, the plaintiff filed a habeas petition in the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. § 2255, moving to vacate, set aside or correct his sentence and for inspection of grand jury lists. Northrop, 1998 U.S. Dist. LEXIS 677 at *2 n.1. In support of his petition, the plaintiff claimed, inter alia, that his guilty plea was ill informed and, accordingly, involuntarily induced and that his court-appointed defense lawyers in the criminal

prosecution, the defendants herein, Attorney Richard Cramer (hereinafter "defendant Cramer")

and Attorney Elton Williams (hereinafter "defendant Williams"), had rendered ineffective

assistance. Id., at *5. Although the District Court was not required to address the plaintiff's

claims on their merits because he had failed to raise those claims in his direct appeal, the District

Court elected to address the claims "in the interest of judicial economy." Id., at *5 n.2

     With respect to the plaintiff's claim that his plea of guilty was involuntary, the District

Court reviewed the record and, particularly, the plea canvas, for "some credible evidence to

support his claims of duress." Id., at *8-*9. The District Court found no such evidence.

Specifically, the District Court determined:

> [T]he record shows that the court was extremely thorough in its plea canvas.
> [The plaintiff] was asked numerous questions concerning, inter alia, his desire to
> plead guilty, his awareness of his rights to present evidence and cross-examine
> witnesses, his awareness of the charges against him, and whether he had the
> opportunity to discuss fully those charges with his lawyers.

Id., at *9 (emphasis added). The District Court further noted that:

> [The plaintiff] entered into the guilty plea after sitting through four days of trial
> during which the government presented twenty-five witness, including one witness
> who identified him as the head of a marijuana distribution enterprise and the
> builder of a bomb to be used in a murder-for-hire plot. There can be no question
> that [the plaintiff] understood the nature of the charges and the evidence against
> him.

Id., at *9-*10 (emphasis added). Accordingly, the District Court concluded that the plaintiff's

contentions that his plea was involuntary were "wholly incredible." Id., at *9.

     Moreover, with respect to the plaintiff's claim that he had suffered ineffective assistance

of counsel, the District Court determined that:

> [The plaintiff's] statements during his guilty plea and his presence in court for four days of the government's case <u>strongly undermines his claim that his lawyers failed to provide him with adequate information on which to base his decision to plead guilty</u>.

<u>Id.</u>, at 12 (emphasis added). The District Court noted that the plaintiff had failed to show that defendant Cramer's representation "fell below an objective standard of reasonableness," or even "a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty." <u>Id.</u>, at *11 (internal quotation marks omitted). To the contrary, upon review of the record, the District Court specifically concluded that defendant Cramer "did an admirable and competent job" on the plaintiff's behalf. <u>Id.</u>, at *12. He "carefully investigated the case . . . filed numerous pre-trial motions . . . thoroughly cross-examined government witnesses and timely objected to questions asked and to evidence introduced by the Government." <u>Id.</u> Accordingly, the District Court concluded that the plaintiff's claims of ineffective assistance of counsel and involuntary plea were without merit and denied the plaintiff's § 2255 Motion without issuance of a certificate of appealability. <u>Id.</u>, at *21.

Following unsuccessful attempts to appeal the District Court's denial of his § 2255 Motion and to otherwise collaterally attack his underlying conviction and sentence, the plaintiff filed the present action, pro se, on June 29, 2002, approximately nine years subsequent to the entry of his judgment of conviction and sentence. First Amended Complaint; Third Amended Complaint, Statement of the Facts, 23-24. The gravamen of the plaintiff's final, Third Amended Complaint, dated May 12, 2003, against defendant Cramer is that defendant Cramer failed to

provide competent legal services as his court-appointed defense counsel in the underlying criminal proceedings. Id., Cause of the Action, 32-38. Specifically, as in his § 2255 Motion, he claims that defendant Cramer's allegedly substandard representation caused him to be ill informed about the nature of the charges brought against him and, accordingly, to involuntarily plead guilty to the continuing criminal enterprise count, for which he "may have no remedy to secure his release from prison." Id., Statement of the Facts ¶¶ 11-14, Cause of the Action, ¶ 34, Conclusion, ¶ 40. Although difficult to decipher, his particular dispute with the continuing criminal enterprise count appears to be that the count was not supported by three felony drug violations in violation of Title 21 of the United States Code, which he claims are necessary predicate offenses of a continuing criminal enterprise charge. Id. Had he known the continuing criminal enterprise count was not sufficiently supported, he claims, he would not have entered a guilty plea to that count. Id.

The plaintiff appears to set forth numerous additional allegations and causes of action, all of which are variations or expansions upon his central allegations of defendant Cramer's incompetence and his resulting involuntary plea. Specifically, he claims that defendant Cramer's "first duty of loyalty" was to the government, in breach of his fiduciary duty to the plaintiff, because he was appointed by the court and financially compensated by the government. Third Amended Complaint, Cause of the Action, ¶¶ 28-30. Additionally, he claims that defendant Cramer "deliberately withheld evidence from the plaintiff, such as 18 audio cassette tapes, police report, and witness testimony," and "refused to locate and interview key witnesses for the

defense, such as defense witness Carl Lipp and Greg Musco." Id., Statement of the Facts, ¶ 15,

Cause of the Action, ¶ 36. Furthermore, he claims that defendant Cramer contracted with him

to provide competent legal services, but failed to do so "in breach of the attorney-client

contract." Third Amended Complaint, Cause of the Action, ¶¶ 27, 35-37. Finally, he alleges

that the defendant Cramer knew that the continuing criminal enterprise charge was not

supported by the allegedly necessary predicate offenses but that, "with knowledge of the law,

and with the intent of defrauding the plaintiff of his rights under the 5th and 6th Amendments of

the United States Constitution, [he] induced the plaintiff into entering into a plea agreement with

the government." Id., Statement of the Facts, ¶ 14. In connection with these allegations, the

plaintiff seeks monetary damages in the amount of $20,000,000 each from defendant Williams

and defendant Cramer, and a trial by jury. Id., Relief, Demand for a Trial by the Jury.

## ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT UNDER RULE 56

Summary judgment should be granted when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c);

see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla

of evidence in support of the nonmoving party's case or metaphysical doubt as to the material

facts will not prohibit summary judgment, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted), and "[i]rrelevant or

unnecessary factual disputes will not be considered." See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  The substantive law governing the case identifies those facts that are material on a motion for summary judgment, <u>Anderson</u>, 477 U.S. at 248, and Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  In effect, the purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims before the resources of the parties and the court have been wasted on a costly and lengthy trial.  <u>Celotex</u>, 477 U.S. at 323-24; <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

In the present case, the plaintiff's predicate allegations -- that the defendant Cramer rendered incompetent legal services and, as a result, that his guilty plea was involuntary -- were actually and necessarily determined meritless, for the express purpose of preserving judicial economy, in the District Court's valid and final judgment denying the plaintiff's prior § 2255 Motion. <u>Northrop</u>, 1998 U.S. Dist. LEXIS 677 at *5 n.2, *8-*13, *21.  Accordingly, the plaintiff is barred by the doctrine of collateral estoppel from relitigating those claims herein.  <u>See</u> <u>Purdy v. Zeldes et al.</u>, 337 F.3d 253 (2d Cir. 2003); <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 288 (2d Cir. 2002); <u>Gelb v. Royal Globe Ins. Co.</u>, 798 F.2d 38, 40-43 (2d Cir. 1986).  <u>See also</u> <u>Hogan v. Cunniff</u>, 1982 U.S. Dist. LEXIS 16470, *5 (Ill. 1982) (discussing collateral estoppel effect of prior habeas proceeding under 28 U.S.C. § 2255) (attached as Exhibit C). Absent those allegations, the plaintiff has failed to raise any genuine issue of material fact and

defendant Cramer is entitled to summary judgment as a matter of law.

## II.    THE PLAINTIFF'S THIRD AMENDED COMPLAINT IS BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL

"The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." Purdy, 337 F.3d at 258; Marvel Characters, 310 F.3d at 288. "It is well-established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." Purdy, 337 F.3d at 258 n.5; Gelb, 798 F.2d at 42. Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Interoceanica Corp. v. Sound Pilots, Inc., 107 f.3d 86, 91 (2d Cir. 1997); Gelb, 798 F.2d at 44.

In the present case, the gravamen of the plaintiff's Third Amended Complaint is that defendant Cramer knowingly failed to apprise him of the components of a valid continuing criminal enterprise charge and that, had he been so apprised, he would not have pleaded guilty to the government's continuing criminal enterprise count set forth against him. Third Amended Complaint, Statement of the Facts ¶¶ 11-14, Cause of the Action, ¶ 34. However, upon its review of the entire record, the District Court actually determined on the merits of the plaintiff's § 2255 Motion that defendant Cramer provided "admirable and competent" representation and that the plaintiff's claim that his plea was "induced" by a lack of "adequate information on which

to base his decision to plead guilty" was "wholly incredible." <u>Northrop</u>, 1998 U.S. Dist. LEXIS 677, at *9, *12. That determination was necessary to the District Court's valid and final judgment denying the plaintiff habeas relief. <u>Id.</u>, at *21. Accordingly, the issues raised in the plaintiff's Third Amended Complaint were fully and fairly litigated and actually and necessarily determined in connection with the District Court's decision denying the plaintiff's § 2255 habeas petition, and the plaintiff's Third Amended Complaint is barred by the doctrine of collateral estoppel. <u>See Northrop</u>, 1998 U.S. Dist. LEXIS 677 at *5 n.2, *8-*13, *21; <u>Purdy</u>, 337 F.3d at 257; <u>Gelb</u>, 798 F.2d at 44.

### A.  THE PLAINTIFF'S CLAIM OF INVOLUNTARY PLEA IS BARRED BY THE HABEAS COURT'S FINAL JUDGMENT TO THE CONTRARY

The plaintiff claims that his plea of guilty was based on inadequate information about the nature of the continuing criminal enterprise charge set forth against him and, as a result, involuntary. Third Amended Complaint, Statement of the Facts ¶¶ 11-14, Cause of the Action, ¶ 34. Specifically, he claims that defendant Cramer failed to appraise him of the predicate offenses allegedly necessary to prove a continuing criminal enterprise charge and that, had he been so appraised, he would not have pleaded guilty to the continuing criminal enterprise count that the government set forth against him. <u>Id.</u> However, because the District Court actually decided the issue of the voluntariness of the plaintiff's plea, because its decision was necessary to its judgment denying the plaintiff habeas relief and because its judgment was final, the plaintiff is collaterally estopped from relitigating the same issue in the present action. <u>See Northrop</u>,

1998 U.S. Dist. LEXIS 677 at *5 n.2, *8-*13, *21; Purdy, 337 F.3d at 257; Gelb, 798 F.2d at 44.

In his § 2255 Motion, the plaintiff claimed that his lawyers failed to provide him with adequate information upon which to base his decision to plead guilty and that, accordingly, his plea of guilty was "induced." Northrop, 1998 U.S. Dist. LEXIS 677 at *9-*10. Upon review of the entire record, however, the District Court concluded that "[t]here can be no question that [the plaintiff] understood the nature of the charges and the evidence against him." Id., at *10. The District Court determined that "the court was extremely thorough in its plea canvas," and that in the process of the canvas, the plaintiff attested that he desired to plead guilty, that he was aware of the charges against him and that he been given the opportunity to discuss those charges fully with his lawyers. Id., at *9. The District Court also noted that the plaintiff had chosen to change his plea to guilty after sitting through four days of his criminal trial, during which the government presented twenty-five witnesses connecting him as the head of a marijuana distribution enterprise and a scheme to build a bomb for use in a murder-for-hire plot. Id., at *8-*9. Based on the sum of these facts, each apparent on the face of the record, the District Court concluded that the plaintiff's claim that "his lawyers failed to provide him with adequate information on which to base his decision to plead guilty" was "wholly incredible." Id., at *9, *12.

In the present action, the plaintiff offers nothing new to supplement the record already reviewed by the habeas court in support of his claim, in this Court, that his plea involuntary. As

a result, this Court's review of the same record upon which the habeas court based its decision would entail a second determination based on the evidence of whether the plaintiff was aware of the nature of the charges to which he chose, after four days of trial, to plead guilty. This is exactly this type of duplicative litigation that the doctrine of collateral estoppel is meant to foreclose. Purdy, 337 F.3d at 260; Gelb, 798 F.2d at 40. The plaintiff's claim in the present case -- that he was insufficiently apprised by defendant Cramer of the nature of the continuing criminal enterprise count set forth against him -- was fully and fairly litigated in the habeas court, was actually determined by that court and was necessary to that court's final judgment denying the plaintiff habeas relief. Northrop, 1998 U.S. Dist. LEXIS 677, at *8-*13, *21. Therefore, the plaintiff is barred by the doctrine of collateral estoppel from relitigating the final judgment of the habeas court in the present case. Purdy, 337 F.3d at 260; Gelb, 798 F.2d at 40.

### B. THE PLAINTIFF'S CLAIM OF INCOMPETENT REPRESENTATION IS BARRED BY THE HABEAS COURT'S DECISION TO THE CONTRARY

The plaintiff's claim that defendant Cramer rendered substandard legal services is similarly barred by the collateral estoppel effect of the District Court's decision denying the plaintiff's § 2255 habeas petition. Northrop, 1998 U.S. Dist. LEXIS 677, *10-*13; Purdy, 337 F.3d at 258-59. It is well-established that in order to prevail upon a claim of legal malpractice, the plaintiff must be able to demonstrate not only that defendant Cramer's conduct fell below the applicable standard of care, but also, that but for defendant Cramer's alleged conduct he would have not have entered a plea of guilty. Davis v. Margolis, 215 Conn. 408, 415 (1990). In the

present case, the plaintiff claims that defendant Cramer failed to provide him with adequate information regarding the government's continuing criminal enterprise count, which, in turn, caused him to plead guilty. Third Amended Complaint, Statement of the Facts ¶¶ 11-14, Cause of the Action, ¶ 34. However, because the plaintiff is collaterally estopped from relitigating the voluntariness of his plea, the final judgment of the habeas court concluding that his plea was voluntary renders him unable to demonstrate that defendant Cramer was the proximate cause his guilty plea. Northrop, 1998 U.S. Dist. LEXIS 677, at *8-*13, *21; Purdy, 337 F.3d at 260; Gelb, 798 F.2d at 40; Davis, 215 Conn. at 415. Rather, the plaintiff's plea, as a matter of law, was voluntary and, as such, he is unable to raise any genuine of material fact regarding defendant Cramer's alleged failure to apprise him of the nature of the charges to which his chose to plead guilty. Id.

Moreover, the plaintiff's subsidiary claims that defendant Cramer failed to locate and interview key witnesses, withheld evidence from him and failed to disclose that his position as court-appointed counsel allegedly interfered with his fiduciary duty to the plaintiff are similarly barred by the habeas court's conclusion that the record "strongly undermines" any reasonable probability that, but for defendant Cramer's conduct, the plaintiff would have insisted on going to trial rather than entering a guilty plea. Northrop, 1998 U.S. Dist. LEXIS 677, at *12; Third Amended Complaint, Statement of the Facts, ¶¶ 14, 15, Cause of the Action, ¶¶ 27-30, 35-37. In evaluating the plaintiff's claim of ineffective assistance of counsel, the District Court applied the two-pronged test announced by the United States Supreme Court in Strickland v.

Washington, 466 U.S. 668 (1984).  Northrop, 1998 U.S. Dist. LEXIS 677, at *10-*11.  The

Strickland test requires that the plaintiff prove that defendant Cramer made errors so serious that

his representation fell below an objective standard of reasonableness, as well as a reasonable

probability that, but for those errors, the plaintiff would not have pleaded guilty and, instead,

would have insisted on going to trial.  Strickland v. Washington, 466 U.S. 668 (1984).

In concluding that the plaintiff had failed to establish a claim of ineffective assistance, the

District Court determined not only that defendant Cramer's' conduct was objectively reasonable

– that he "carefully investigated the case," "filed numerous pre-trial motions," "thoroughly

cross-examined government witnesses" and "timely objected to questions asked and to evidence

introduced" – but also, that the record renders "wholly incredible" the plaintiff's claim that

defendant Cramer failed to provide the plaintiff with adequate information and, as such, was the

"but for" cause of the plaintiff's decision to plead guilty.  Northrop, 1998 U.S. Dist. LEXIS 677,

at *9, *12.  The District Court concluded that, to the contrary, the record indicates that

defendant Williams "did an admirable and competent job on [the plaintiff's] behalf."  Id., at *12.

Accordingly, the gravamen of the plaintiff's claim in the present case -- that defendant

Williams' alleged failure to adequately apprise him of the nature of the continuing criminal

enterprise count set forth against him caused him to enter an involuntary guilty plea -- was fully

and fairly litigated in the habeas court, was actually determined by that court and was necessary

to its final decision denying the plaintiff habeas relief, in part, on the basis that the record

demonstrated that the plaintiff's plea was knowing and voluntary due to the "admirable and

competent" representation of defendant Cramer. <u>Northrop</u>, 1998 U.S. Dist. LEXIS 677, at *8-*13, *21; Third Amended Complaint, Statement of the Facts ¶¶ 11-14, Cause of the Action, ¶ 34. The plaintiff offers nothing new to supplement the record in this, his most recent attempt, to challenge his conviction and sentence. The habeas court elected to review, and deny, the plaintiff's claims for habeas relief on their merits specifically "in the interest of judicial economy," and the doctrine of collateral estoppel forecloses the present, duplicative litigation. <u>Northrop</u>, 1998 U.S. Dist. LEXIS 677, at *5 n.2, *8-*13, *21; <u>see</u> <u>Purdy</u>, 337 F.3d at 260; <u>Gelb</u>, 798 F.2d at 40. Therefore, the plaintiff's Third Amended Complaint fails to raise a genuine issue of material fact and defendant Cramer is entitled, as a matter of law, to summary judgment. Fed. R. Civ. P. 56 (c); <u>see, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322.

### CONCLUSION

For the foregoing reasons, defendant Attorney Richard Cramer respectfully requests that his Motion for Summary Judgment be granted.

Respectfully submitted,

DEFENDANT, RICHARD CRAMER

By:_____
    Richard Cramer
    449 Silas Deane Highway
    Wethersfield, CT 06109
    Tel. (860) 257-3500
    Federal Bar No. ct00016
    Email: cramer @ snet.net

# EXHIBIT A

343793

LEXSEE 1998 U.S. DIST. LEXIS 677

AARON B. NORTHROP v. UNITED STATES OF AMERICA

Case No. 3:92cr32(AHN), 3:96cv836(AHN), 3:97cv712(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1998 U.S. Dist. LEXIS 677*

January 14, 1998, Decided

DISPOSITION: [*1] Northrop's Motion Under U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [doc. # 181] and Motion for Inspection of Grand Jury Lists [doc. # 172] DENIED.

LexisNexis (TM) HEADNOTES - Core Concepts:

COUNSEL: AARON B. NORTHROP, plaintiff (96-CV-836), (97-CV-712), Pro se, White Deer, PA.

JUDGES: Alan H. Nevas, United States District Judge.

OPINIONBY: Alan H. Nevas

OPINION:

RULING ON PETITIONER'S MOTION UNDER *28 U.S.C. § 2255* TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On March 11, 1993, after three days of trial in which the Government presented twenty-five witnesses and offered approximately 280 pounds of marijuana into evidence, the petitioner, Aaron B. Northrop ("Northrop"), entered a plea of guilty to conspiracy to distribute marijuana and cocaine, in violation of *21 U.S.C. § 846;* engaging in a continuing criminal enterprise, in violation of *21 U.S.C. § 848;* making and possessing a bomb, in violation of *26 U.S.C. § § 5861*(c), (f); and using interstate commerce facilities in the commission of a murder-for-hire, in violation of *18 U.S.C. § 1958.* On October 25, 1993, after hearing evidence obtained from a prolonged investigation into Northrop's mental competency by Government and defense experts, the court found Northrop competent [*2] for sentencing. Northrop was sentenced to 600 months' incarceration on the continuing criminal

enterprise count; 120 months' incarceration on each of the other counts, to run concurrently with the 600 month sentence; three years of supervised release; and a special assessment of $ 250. The court also ruled that Northrop would, in the future, be denied federal benefits. On direct appeal, the Second Circuit affirmed the judgment of conviction and the sentence. See *United States v. Northrop, 40 F.3d 1238 (2d Cir. 1994).*

Now pending before the court are Northrop's Motion Under U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence and Motion for Inspection of Grand Jury Lists. n1 For the following reasons, these motions [docs. # 172, 181] are DENIED.

n1 Northrop originally filed motions to correct and/or modify his sentence in November, 1996, which were assigned to case number 3:96cv836. The court denied these motions without prejudice to renewal because Northrop had made several procedural errors. See United States v. Northrop, Case No. 3:96cv836(AHN) (D. Conn. November 14, 1996). Then, in April, 1997, Northrop filed a second habeas petition, which is the subject of this ruling.

[*3]

STANDARD OF REVIEW

"Section 2255 provides a mechanism for federal prisoners to vacate sentences imposed in violation of the laws or Constitution of the United States." *Hardy v. United States, 878 F.2d 94, 96 (2d Cir. 1989).* The available grounds for relief on a § 2255 motion, however, are more limited than those available on direct appeal. Id.

The four grounds on which a federal prisoner may move the court to vacate, set aside, or correct a sentence are that (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence was greater than the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. See *Hill v. United States, 368 U.S. 424, 426-27, 7 L. Ed. 2d 417, 82 S. Ct. 468 (1962)*. Section 2255 does not provide a remedy for "all claimed error in conviction and sentencing." *United States v. Addonizio, 442 U.S. 178, 185, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979)*. Rather, it is intended to redress only "a fundamental defect" which results in a "complete miscarriage of justice" or an "omission inconsistent with the rudimentary [*4] demands of fair procedure." *Hill, 368 U.S. at 428*.

If the pleadings show that a prisoner is not entitled to relief, the district court may rule on the § 2255 motion without granting a hearing. See *Machibroda v. United States, 368 U.S. 487, 495, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962)*. As the Second Circuit has held, "where a petition omits meritorious allegations that can be established by competent evidence, it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing." *United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990)* (citation and internal quotation marks omitted). A petitioner must allege specific facts to support his claim "which he is in a position to establish by competent evidence," *Dalli v. United States, 491 F.2d 758, 760-61 (2d Cir. 1974)* (citations omitted), and where he fails to do so, the court may dismiss the petition without a hearing upon a determination that the supporting allegations are insufficient as a matter of law. See *Johnson v. Fogg, 653 F.2d 750, 753 (2d Cir. 1981)*.

## DISCUSSION

In support of his petition, Northrop makes eights arguments, some of which have multiple [*5] parts. In short, he maintains: (1) this court lacks jurisdictions over him; (2) his guilty plea was involuntarily induced; (3) he had ineffective assistance of counsel; (4) his conviction violated the Double Jeopardy Clause of the Fifth Amendment; (5) his Grand and Petit Juries were unconstitutionally selected and impaneled; (6) the Sentencing Guidelines are unconstitutional; (7) *26 U.S.C. § 5861* is unconstitutional under the Commerce Clause; and (8) his sentence was improperly imposed because, inter alia, he did not read the pre-sentence report or discuss it with counsel, and because the court relied on false information. n2

n2 While the court addresses each of Northrop's claims on its merits, it appears that,

because he raised none of these issues in his direct appeal and has failed to show "cause" for failing to raise them, he is procedurally barred from bringing all of the claims, except the jurisdictional challenge, as part of his habeas petition. See *United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995)* (holding that a defendant who fails to raise a claim on direct appeal is barred from collateral review of the claim on a § 2255 petition unless he can show cause for failing to raise the claim on appeal). Nonetheless, in the interest of judicial economy, the court will address each of Northrop's claims on its merits.

[*6]

For the reasons stated below, the court finds that each of these arguments lacks merit and therefore denies Northrop's § 2255 motion without holding an evidentiary hearing. See *Aiello, 900 F.2d at 534*.

I. Court's Jurisdiction

Northrop claims that "the federal District Courts in the state of Connecticut are 'legislative' courts and receive no authority, and its judges no rights, from the judicial article of the Constitution." (Petr's Mot. Under 28 U.S.C. § 2255 [hereinafter "Petr's Mot."] Attach. 1 at 1.) He argues that these courts were created by Congress to give advisory decisions only. (Id.) To the extent that this claim is even comprehensible, it is utterly devoid of merit.

The Constitution provides:

> The judicial Power of the United States, shall be vested in one Supreme Court, and in such other inferior Courts as the Congress may from time to time ordain and establish.

U.S. Const. art. III, § 1. Under *18 U.S.C. § 3231*, district courts have original jurisdiction over all criminal matters arising under the law of the United States. See *18 U.S.C. § 3231* (stating that district courts "have original jurisdiction, exclusive of the courts [*7] of the states, of all offenses against the laws of the United States"); see also *Field v. United States, 193 F.2d 86, 90 (2d Cir. 1951)* (recognizing that "District Courts of the United States have jurisdiction of all offenses against the laws of the United States"). In short, the United States Constitution expressly gives Congress the power to create courts inferior to the Supreme Court. The United States District Court for the District of Connecticut is such a court and therefore has jurisdiction over Northrop's criminal case. n3

n3 To the extent that Northrop claims that the courts in this district lack personal jurisdiction over him (see Petr's Mot. Am. Pet. Under 28 U.S.C. § 2255), this argument also lacks merit. Nothing in the Tenth Amendment or the Fourteenth Amendment to the Constitution, or in the Constitution itself prevents this court from exercising jurisdiction over Northrop in the underlying criminal case. Northrop was indicted for violating federal laws within the boundaries of the State of Connecticut. The United States District Court for the District of Connecticut is the proper forum for his case.

[*8]

## II. Voluntariness of Northrop's Guilty Plea

As the Supreme Court has noted:

> The representations of the defendant . . . at [a plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison, 431 U.S. 63, 73-74, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977)* (citation omitted). While the court is not permitted to dismiss entirely a defendant's claim that his statements at a plea hearing were not voluntary, the defendant must present some credible evidence to support his claims of duress. See *United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992).*

The record here speaks for itself. (See Gov't's Opp. Petr's Mot. Pursuant to 28 U.S.C. § 2255 [hereinafter "Gov't's Opp.] Ex. 6 [hereinafter "3/11/93 Tr."].) On March 11, 1993, after three days of trial, the court conducted a plea hearing prompted by Northrop's request to change his plea to [*9] guilty on the pending criminal charges. The record shows that the court was extremely thorough in its plea canvas. Northrop was asked numerous questions concerning, inter alia, his desire to plead guilty, his awareness of his rights to present evidence and cross-examine witnesses, his awareness of the charges against him, and whether he had the opportunity to discuss fully those charges with his lawyers. (See 3/11/93 Tr. at 3-7.) In response to the court's question concerning predictions or promises that

were made to him by the prosecutor or by his lawyers about his sentence, Northrop stated that no such promises had been made. (See id. at 24.) Furthermore, the record indicates that the court, based on its lengthy and thorough canvas of the defendant, found that Northrop was competent to enter his guilty plea and that the guilty plea was entered into voluntarily and without any coercion or duress. (See id. at 4, 15, 24.) Therefore, on the face of this record, Northrop's contentions that he was induced into changing his plea to guilty are "wholly incredible." *Blackledge, 431 U.S. at 74.* Northrop entered into the guilty plea after sitting through four days of trial [*10] during which the government presented twenty-five witnesses, including one witness who identified him as the head of a marijuana distribution enterprise and the builder of a bomb to be used in a murder-for-hire plot. There can be no question that Northrop understood the nature of the charges and the evidence against him.

## III. Ineffective Assistance of Counsel n4

> n4 Again, the court notes that Northrop's failure to raise this issue on direct appeal, given the fact that he was represented on appeal by new counsel, probably bars him from raising the claim in this habeas petition. See *Billy-Eko v. United States, 8 F.3d 111, 114 (2d Cir. 1993)* (recognizing that an exception to the general rule that failure to bring an ineffective assistance claim on direct appeal does not bar a defendant from raising the issue in a § 2255 motion arises where new appellate counsel represented the defendant, and the claim is solely based on the trial record).

In *Strickland v. Washington, 466 U.S. 668, 80 L. Ed.* [*11] *2d 674, 104 S. Ct. 2052 (1984),* the Supreme Court held that, to establish an ineffective assistance claim, a defendant must prove that the attorney "made errors so serious" that the representation fell below "an objective standard of reasonableness" and that there is a "reasonable probability" that without such errors, the jury would have had a reasonable doubt as to his guilt. See *id. at 687-88, 695.* The inquiry must focus "on the fundamental fairness of the proceeding whose result is being challenged." *Id. at 696.* The court should not challenge an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options." *Id. at 690-91.* In the context of a guilty plea, to support an ineffective assistance claim, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted

Case 3:02-cv-00875-AWT    Document 71    Filed 11/24/2003    Page 21 of 30

Page 4
1998 U.S. Dist. LEXIS 677, *

on going to trial." *Hill v. Lockhart, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).*

Nothing in the record supports Northrop's allegations of ineffective assistance of counsel. The court appointed two experienced criminal trial lawyers to represent [*12] Northrop at trial. Attorneys Elton Williams and Richard S. Cramer did an admirable and competent job on Northrop's behalf. They carefully investigated the case (see docs. # 59, 72), filed numerous pre-trial motions (see docs. # 12-27, 43-56, 58, 60-61, 81, 84, 89-93), and, during the four days of trial, thoroughly cross-examined government witnesses and timely objected to questions asked and to evidence introduced by the Government. Furthermore, Northrop's statements during his guilty plea and his presence in court for four days of the government's case strongly undermines his claim that his lawyers failed to provide him with adequate information on which to base his decision to plead guilty.

Lastly, there is no merit to Northrop's claim that his lawyers failed to request a competency hearing for him. The record indicates that the court did, in fact, order an examination of Northrop's mental condition, pursuant to *18 U.S.C. § 4244,* and that such an examination was held. In addition, Northrop's counsel requested an examination by an independent psychiatrist, and the court granted this request. Both experts concluded that Northrop was not suffering from a mental illness and [*13] that he was competent to be sentenced. n5

n5 The Second Circuit has already held that the court's decision not to hold a competency hearing did not constitute an abuse of discretion. (See Gov't's Opp. Ex. 4.)

For these reasons, this claim must also fail.

IV. Double Jeopardy

Northrop first claims that the court's imposition of a sentence of incarceration following its $ 10,106.45 forfeiture order in the October, 1988 in rem civil proceedings brought by the Government n6 constitutes a second punishment under the Double Jeopardy Clause of the Fifth Amendment. This claim is without merit.

n6 The forfeiture proceeding related to money and property seized from Northrop's residence by the Statewide Narcotics Task Force on October 12, 1988.

The Supreme Court recently held that in rem civil forfeitures are neither "punishment" [*14] nor "criminal" as those terms are used in the Double Jeopardy Clause. See *United States v. Ursery, 518 U.S. 267, 135 L. Ed. 2d 549, 116 S. Ct. 2135, 2149 (1996).* Thus, because the Supreme Court has recognized that Congress is free to impose both a civil sanction and a criminal punishment for the same act or omission, no Double Jeopardy issue exists with respect to the criminal sentence in this case and the prior in rem civil forfeiture. n7

n7 To the extent that Northrop claims that the $ 10,106.45 civil forfeiture award was excessive under the Eighth Amendment, the court will not address this issue in the context of this § 2255 motion challenging his 1993 guilty plea and sentence. The issue of whether the civil fine is excessive has no bearing on issues relating to his conviction and sentence in this case. A § 2255 motion allows a prisoner to challenge a criminal sentence imposed by the court, not a fine imposed in a civil action.

Next, Northrop argues that the judgment of conviction and sentence in this case constitute [*15] a second punishment under the Double Jeopardy Clause because, in August, 1989, he was convicted in the Connecticut Superior Court of criminal distribution of narcotics and sentenced to one year in prison. This argument also lacks merit. The Double Jeopardy Clause does not protect a defendant from having separate punishments imposed by two different sovereigns. See *Koon v. United States, 518 U.S. 81, 116 S. Ct. 2035, 2053, 135 L. Ed. 2d 392 (1996)* (holding that successive state and federal prosecutions do not violate the Double Jeopardy Clause).

Finally, Northrop claims that the inclusion of both a conspiracy to distribute marijuana and cocaine count and a continuing criminal enterprise count violates the Double Jeopardy Clause. However, at sentencing, the court merged these two counts into one and only one sentence was imposed for the two counts. This approach, in which the lesser included offense is merged with the greater, has been approved by the Second Circuit. See *United States v. Aiello, 771 F.2d 621, 632-34 (2d Cir. 1985);* see also *United States v. Lindsay, 985 F.2d 666, 671 (2d Cir. 1993)* (holding that the Government can indict two offenses, even if one is a lesser [*16] included offense of the other). n8 Thus, no double jeopardy violation occurred.

n8 In *Rutledge v. United States, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996)*, the Supreme Court rejected the Seventh Circuit's method for sentencing a defendant who has been convicted of two counts, one which is the lesser included offense of the other. This method allowed for the entry of judgment and sentencing on both counts. *116 S. Ct. at 1250-51*. Contrary to Northrop's claim, the Rutledge decision gives additional support to the Second Circuit's method which merges the two counts into one and imposes one sentence.

## V. Selection and Impaneling of Grand and Petit Juries

Northrop next claims that his conviction was obtained by an unconstitutionally impaneled grand jury and petit jury. This claim is, however, barred. The record in the underlying proceedings indicates that Northrop consulted with his lawyers regarding, inter alia, the effect of a waiver and that he did, in fact, waive this claim [*17] by (1) signing the plea agreement, which specifically stated that by entering into the agreement he was waiving any challenge to the jury selection process; (2) signing a written waiver of his right to challenge the composition of the grand or petit jury in his case; and (3) stating to the court that he was waiving such a challenge. (See 3/11/93 Tr. at 23.)

Moreover, even if Northrop had not made such waivers, this claim would still fail because he has not made the requisite prima facie showing to support a jury composition challenge. In order to make such a showing, the defendant must prove:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996)* (citation omitted). Northrop has not come forward with evidence establishing any of these elements. He has not even alleged that there is a cognizable [*18] group that was excluded from the jury selection process. Accordingly, this claim must fail. Further, in light of the fact that the challenge to the composition of the grand and petit juries lacks merit, Northrop's Motion for

Inspection of Grand Jury Lists [doc. # 172] is also DENIED.

## VI. Constitutionality of Sentencing Guidelines

In *Mistretta v. United States, 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989)*, the Supreme Court considered delegation of power and separation of powers arguments similar to those that Northrop makes here. The Court held:

> Congress neither delegated excessive legislative power nor upset the constitutionally mandated balance of powers among the coordinate Branches. . . . Our system of checked and balanced authority [does not] prohibit Congress from calling upon the accumulated wisdom and experience of the Judicial Branch in creating policy on a matter uniquely within the ken of judges. Accordingly, we hold that the [Sentencing Guidelines are] constitutional.

*Id. at 412*. Other constitutional challenges to the Sentencing Guidelines have similarly failed. See, e.g., *United States v. Vizcaino, 870 F.2d 52 (2d Cir. [*19] 1989)* (rejecting due process challenge); *United States v. Gonzalez, 922 F.2d 1044 (2d Cir. 1991)* (rejecting Eighth Amendment challenge); *United States v. Jackson, 968 F.2d 158 (2d Cir. 1992)* (rejecting vagueness challenge). Therefore, Northrop's challenge is rejected.

## VII. Constitutionality of 26 U.S.C. § 5861

Northrop next contends that the statute prohibiting the making or possession of an unregistered destructive device is unconstitutional under the Commerce Clause of the Constitution. However, numerous courts have already held that Congress did not exceed its power to regulate interstate commerce by enacting *26 U.S.C. § 5861*. See, e.g., *United States v. Pearson, 8 F.3d 631, 633 (8th Cir.)* (stating that "Congress reasonably concluded that mere possession of firearms threatens the lives and safety of law enforcement officials and the public at large"), cert. denied, *511 U.S. 1126, 114 S. Ct. 2132, 128 L. Ed. 2d 863*, reh'g denied, *512 U.S. 1247, 114 S. Ct. 2772, 129 L. Ed. 2d 885 (1993); United States v. Hale, 978 F.2d 1016 (8th Cir.)*, cert. denied, *507 U.S. 997, 113 S. Ct. 1614, 123 L. Ed. 2d 174 (1992); United States v. Dodge, 61 F.3d 142 [*20] (2d. Cir.)*, cert. denied, *516 U.S. 969, 116 S. Ct. 428, 133 L. Ed. 2d 343 (1995); United States v. Giannini, 455 F.2d 147 (9th Cir. 1972)*. Based on these decisions, and absent any proffer by Northrop other than his unsupported allegation that

the statute is unconstitutional, the court denies Northrop's Commerce Clause challenge.

VIII. Additional Claims

Lastly, Northrop makes a number of allegations concerning information on which the court relied when it sentenced him. (See, e.g., Pet'r's Mot. at 19 (stating that the judge relied on materially false and unreliable information).) These unsupported allegations have no basis in law or fact and therefore can therefore be dismissed summarily. n9

n9 One claim that Northrop makes is that he was unable to read and discuss the pre-sentence report with his lawyers. The record of both the sentencing hearing and the October 14, 1993 status conference clearly shows the lengths to which his attorneys and the court went to insure that Northrop read and understood the pre-sentence report. In fact, during the sentencing hearing, one of his attorneys stated that he had gone to the prison to read the report to Northrop, but that Northrop walked out of the room after he read only two-thirds of the report. Subsequent to finding, based on the experts' reports, that Northrop was competent to be sentenced and noting that Northrop repeatedly refused to read the pre-sentence report or to allow his attorneys to read it to him, the court made a finding that Northrop waived his right to read the report.

[*21]

CONCLUSION

For the reasons stated above, Northrop's Motion Under U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence [doc. # 181] and Motion for Inspection of Grand Jury Lists [doc. # 172] are DENIED.

In addition, the court determines that the petition and motion present no question of substance for appellate review, and that the petitioner has failed to make a "substantial showing" of denial of a federal right. See *Barefoot v. Estelle, 463 U.S. 880, 893, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983)*; see also *Rodriquez v. Scully, 905 F.2d 24 (2d Cir. 1990)*. Accordingly, a certificate of appealability will not issue, and the Clerk of the Court is directed to close this case.

SO ORDERED this 14th day of January, 1998 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge

# *EXHIBIT B*

343793

LEXSEE 40 F.3D 1238

USA v. Northrop

93-1748

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*40 F.3d 1238; 1994 U.S. App. LEXIS 32855*

November 1, 1994, Decided

NOTICE: [*1]

RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

PRIOR HISTORY: United States District Court for the District of Connecticut. 3:92-cr-32.

OPINION:

Affirmed

# *EXHIBIT C*

343793

LEXSEE 1982 U.S. DIST. LEXIS 16470


**JAMES C. HOGAN, Plaintiff, v. KENNETH CUNNIFF, Defendant.**


No. 80 C 4869


**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**


*1982 U.S. Dist. LEXIS 16470*


**December 23, 1982**


**LexisNexis (TM) HEADNOTES - Core Concepts:**


**OPINIONBY: [*1]**

   MORAN


**OPINION:**

   MEMORANDUM AND ORDER

   Plaintiff James C. Hogan ("Hogan") brings this pro se diversity action against Kenneth L. Cunniff ("Cunniff"), the court-appointed attorney who defended him against federal charges arising out of the fire-bombing of a tavern in Godley, Illinois. The case comes before us on Cunniff's motion to dismiss or, in the alternative, for summary judgment and Hogan's cross-motion for summary judgment. For the reasons set forth below, we grant Cunniff's motion.

   A federal jury convicted Hogan on February 20, 1976. The conviction was affirmed on appeal. *United States v. Sweet, 548 F.2d 198 (7th Cir. 1977).* Cunniff represented Hogan both at trial and on appeal. Additionally, Cunniff filed on Hogan's behalf an unsuccessful motion to reconsider the denial of a motion for reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

   The complaint charges Cunniff with eleven counts of tortious misconduct stemming from his representation of Hogan. For purposes of analysis, we divide the counts into three separate categories: legal malpractice (Counts 1, 2, 3, 7, 8, 10 and 11), fraudulent misrepresentation (Counts 5, 6 and 9), and [*2] fraudulent solicitation of legal fees (Count 4). We consider each in turn.

LEGAL MALPRACTICE

   Hogan's claim of malpractice against Cunniff is based on several allegedly negligent acts of omission. Specifically, he alleges that Cunniff did not spend sufficient time interviewing him, did not adequately attack the credibility and reliability of several government witnesses or move for a mistrial based on the allegedly perjured testimony of one of the witnesses, did not show Hogan his presentence report so that he could correct erroneous information contained therein prior to sentencing, and failed to present Hogan's defense of coercion.

   Under Illinois law of legal malpractice, an attorney is liable to his former client "only when he fails to exercise a reasonable degree of care and skill; he is not liable for mere errors of judgment." *Smiley v. Manchester Insurance & Indemnity Co., 71 Ill. 2d 306, 313, 375 N.E. 2d 118, 122 (1978).* To state a valid claim for relief, plaintiff must demonstrate a causal nexus between the injury alleged and some act of negligence on the part of the defendant attorney. Thus, to recover

1982 U.S. Dist. LEXIS 16470, *

damages, plaintiff must allege and prove that but for the attorney's [*3] negligence, he would have been successful in the prosecution or defense of the action in question. See *Connaughton v. Gertz, 94 Ill.App. 3d 265, 268, 418 N.E.2d 858, 860 (1981)*. Negligence without resulting damage is not actionable. *Chicago Red Top Cab Association v. Gaines, 49 Ill. App. 3d 332, 364 N.E.2d 328 (1977)*.

The Seventh Circuit has interpreted Illinois law to require plaintiff in a malpractice action challenging the adequacy of representation in criminal proceedings to allege and prove his innocence of the crime with which he was charged. *Walker v. Kruse, 484 F.2d 802, 804 (7th Cir. 1973)*. Absent proof of innocence, plaintiff cannot show that he suffered harm as a result of the defense attorney's malpractice. As in Walker, many of the alleged shortcomings in Cunniff's defense of Hogan do not directly impugn the soundness of the jury's finding of guilt. Hogan did not challenge the sufficiency of the evidence either on appeal, or in the Section 2255 motion he filed on his own behalf, *Sweet, supra, 548 F.2d at 200*, nor does he allege his innocence here. Therefore, under Walker, the complaint is insufficient to state a claim for relief under Illinois law.

Hogan's claim [*4] of legal malpractice is flawed in another respect. Prior to the commencement of this action, Hogan challenged the constitutional effectiveness of Cunniff's representation of him by collaterally attacking his conviction in a proceeding under *28 U.S.C. § 2255*. Applying the legal standard adopted by the Seventh Circuit in *United States ex rel. Williams v. Twomey, 510 F.2d 634 (7th Cir.), cert. denied, 423 U.S. 876 (1975)*, Judge Thomas R. McMillen rejected Hogan's claim of ineffective assistance of counsel. United States v. Hogan, 75 CR 529 (N.D. Ill. Jun. 23, 1981) (Slip Op. at 2-3). Judge McMillen's finding that Cunniff's defense of Hogan met minimum standards of professional representation bars Hogan from relitigating the adequacy of Cunniff's performance in this malpractice action. n1

    n1 Cunniff does not assert collateral estoppel as an affirmative defense. Nonetheless, we may consider the existence of such a defense since Hogan is proceeding as a pauper pursuant to *28 U.S.C. § 1915*. See *In re Green, 669 F.2d 779, 787 (D.C. Cir. 1981); Phillips v. Carey, 638 F.2d 207, 209 (10th Cir.), cert. denied, 450 U.S. 985 (1981)*.

The Seventh Circuit in *Walker, supra*, relied on [*5] collateral estoppel as one of several alternative grounds for dismissal of the plaintiff's legal malpractice suit. The court noted that the standard of proof required to prove ineffective assistance of counsel in a constitutional sense

was more stringent than that required to prove negligence in a legal malpractice action. Despite the variance in the legal standards, the court found that the Illinois courts "might very well bar relief" in a malpractice action raising contentions which the Illinois Supreme Court had already considered on direct appeal and dismissed for "clear want of merit." *Walker, supra, 484 F.2d at 804*.

The case for estoppel is stronger here for, unlike the legal standards examined in Walker, the two legal standards at issue in this action - the federal standard for ineffective assistance of counsel and the state standard for legal malpractice - are virtually identical. To prove ineffective assistance of court-appointed counsel under Illinois law, a defendant must show that his attorney's conduct was "of such defective character as to make the defense a farce." *People v. Dean, 31 Ill.2d 214, 218, 201 N.E.2d 405, 407 (1964)*. As Walker acknowledged, this standard [*6] appears to be more strenuous than the one required to prove negligence. Presumably, an attorney's defense of an accused may lack a reasonable degree of skill without being a farce. But the dismissal of Hogan's Section 2255 motion attacking the adequacy of Cunniff's performance was not based on Illinois law. The constitutional standard for ineffective assistance of counsel applicable in this circuit, and the one expressly utilized by Judge McMillen in disposing of Hogan's claims, was adopted in *United States ex rel. Williams v. Twomey, supra*:

The criminal defendant, whether represented by his chosen counsel, or a public agency, or a court-appointed lawyer, has the constitutional right to an advocate whose performance meets a minimum professional standard. *510 F.2d at 640*. This standard is the functional equivalent of the state standard for legal malpractice. A finding that a criminal attorney's performance met minimum professional standards cannot but preclude a finding that he failed to exercise a reasonable degree of care and skill ordinarily expected of members of the legal profession. Thus, the doctrine of collateral estoppel precludes Hogan from relitigating in this malpractice [*7] action those issues concerning Cunniff's competence that were previously raised and determined in post-trial motions filed by Hogan in his criminal case. See *McCord v. Bailey, 636 F.2d 606, 608-10 (D.C. Cir. 1980), cert. denied, 451 U.S. 983 (1981)*.

Two of the issues asserted in the complaint were not raised as grounds for relief under Section 2255. Hogan alleges for the first time in this action that Cunniff was negligent in failing to mount a defense of coercion on his behalf. Because this issue was not addressed in the earlier proceeding and because it strikes at the integrity of the conviction, we consider it separately.

Hogan alleges that Cunniff refused to present a defense based on coercion. Cunniff allegedly rejected the proposed defense as frivolous citing the Patty Hearst trial as an example. Nonetheless, Cunniff agreed to argue the defense if Hogan provided him with material to support it. Hogan alleges that he complied with this request and that he and his family gave Cunniff a handwritten note from Hogan's co-defendant which contained threats to the lives of Hogan and his family.

Accepting these allegations as true, they do not state a claim in tort for malpractice. [*8] Coercion will excuse criminal conduct only in very limited circumstances. A defense of duress or coercion is available only if the defendant reasonably feared immediate death or serious bodily injury which could be avoided only by committing the criminal act charged. *United States v. Nickels, 502 F.2d 1173, 1177 (7th Cir. 1974)*, cert. denied, *426 U.S. 911 (1976)*. Even if the fear of injury is reasonable, written threats to a defendant and his family do not evidence the crucial element of immediacy required to support a defense of coercion. *United States v. Patrick, 542 F.2d 381, 387-88 (7th Cir. 1976)*, cert. denied, *430 U.S. 931 (1977)*. Thus, under the facts alleged, the defense of coercion was unavailable to Hogan as a matter of law. Therefore, he cannot now contend that he suffered prejudice as a result of Cunniff's failure to raise the issue of coercion at trial. Without resulting damage, he cannot hold Cunniff liable for legal malpractice.

Hogan also alleges that Cunniff committed malpractice in filing a "Motion to Reconsider Motion for Reduction of Sentence." The motion was denied as untimely. Hogan contends that Cunniff was negligent in accepting $500 payment for a [*9] motion he should have known was late. n2

n2 To rebut these allegations, Cunniff submits a copy of a letter he sent to Hogan's wife. The letter reiterates prior advice given to Hogan and his wife concerning the lateness in filing the motion and disclaims any projection as to the outcome. But because the letter is not authenticated, we cannot consider it in ruling on Cunniff's motion.

An examination of the motion in question, however, shows that Cunniff sought more than just reconsideration of the Rule 35 motion. n3 The motion was styled alternatively as a "Request for a Recommendation by this Court to the Parole Board that the defendant Be Granted an Early Parole, Pursuant to this Court's Supervisory Authority." The court could have granted Hogan's alternative request for a recommendation for early parole even though the motion to reconsider was untimely. See

*28 C.F.R. § 2.19(d) (1982)*. Therefore, we cannot find that Cunniff acted negligently in filing the motion on Hogan's behalf. Since we consider materials outside the pleadings, we grant Cunniff summary judgment with respect to this claim.

n3 The court may take judicial notice of its own records. See *Conway v. Oliver, 429 F.2d 1307, 1308 (9th Cir. 1970)*. [*10]

FRAUDULENT MISREPRESENTATION

Hogan alleges that while the jury was deliberating, Cunniff stated that he would not be convicted. He further alleges that just prior to sentencing Cunniff told him he would receive a slap on the wrist, probation and maybe a fine. Hogan asserts that his mother died as a result of Cunniff's fraudulent misrepresentations.

In order to constitute fraud under Illinois law, a misrepresentation "must consist of a statement of material fact, false and known to be so by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement." *Roth v. Roth, 45 Ill.2d 19, 23, 256 N.E.2d 838, 840 (1970)*. Clearly, Cunniff's statements to Hogan were no more than predictions as to future events, not statements of material fact. Moreover, Hogan does not allege that he acted in detrimental reliance upon Cunniff's statements. Thus, the elements essential to a claim of fraudulent misrepresentation are missing and Cunniff cannot be held liable for his statements.

FRAUDULENT SOLICITATION OF LEGAL FEES

Hogan alleges that Cunniff pressured him to pay $1,000 for his defense even though Hogan did not have [*11] the means to afford it. Hogan borrowed the money, but was convicted nonetheless. He avers that Cunniff insisted that he be paid in cash and was visibly upset when Hogan presented him with a check. Hogan implies that Cunniff wrongfully solicited payment for his personal benefit and gain.

The record in the criminal case indicates that Cunniff deducted the $1,000 Hogan paid him from the amount he requested in the voucher submitted to the court for payment of services rendered in connection with defending Hogan under the Criminal Justice Act. Since Cunniff fully accounted for all fees paid to him by Hogan, we grant him summary judgment as to Hogan's claim of fraudulent solicitation.

For the reasons stated, we grant defendant's motion to dismiss as to all counts save counts 4 and 8. As to the those counts, we grant summary judgment in favor of defendant. Accordingly, we direct that judgment enter denying relief to plaintiff and dismissing this action.

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed this 24th day of November 2003 to:

Aaron Ben Northrop
#61713-080
Lompoc U. S. Penitentiary
3901 Klein Boulevard
Lompoc, CA 93436

Christopher L. Brigham, Eq.
Updike Kelly & Spellacy, PC
265 Church Street, 10th Floor
New Haven, CT 06510

_____
Richard S. Cramer