UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury N-91-2

United States Dist......
District of Connect.c it
FILED AT    NEW HAvEN
12/9/92
Kevin F. Rowe, Clerk
By _____
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:92CR00032(AHN) |
| AARON NORTHROP | : | Violations: |

21 U.S.C. § 846
  (Conspiracy to distribute
  marijuana and cocaine)
21 U.S.C. § 841(a)(1)
  (Possession with intent
  to distribute cocaine)
21 U.S.C. § 848
  (Engaging in a Continuing
  Criminal Enterprise)
26 U.S.C. §§ 5861(c) and (f)
  (Make and possess a destructive
  device)
18 U.S.C. § 1958
  (Use of interstate commerce
  facilities in the commission
  of murder-for-hire)
18 U.S.C. § 401(3)
  (Contempt of Court)

S U P E R S E D I N G
I N D I C T M E N T

The Grand Jury charges:

COUNT ONE
(21 U.S.C. § 846)

From in or about the Summer of 1988 and continuing to on or

about April 7, 1992, the exact dates unknown to the Grand Jury,

in the District of Connecticut and elsewhere,

AARON NORTHROP,

defendant herein, together with coconspirator Anthony Amendola,

Exhibit B

44

- 2 -

who is not charged as a defendant herein, and other coconspirators known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, and agreed together and with one another to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Overt Acts

In furtherance of this conspiracy and to effect its objects, NORTHROP and his coconspirators committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

1.    In or about the Summer of 1988, NORTHROP, Amendola, and a third person drove from Connecticut to New York City and purchased approximately one kilogram of cocaine for approximately $18,500 that they later distributed in Connecticut.

2.    Between in or about the Summer of 1988 and in or about December 1988, NORTHROP, Amendola, and others regularly drove from Connecticut to the Bronx, New York and purchased multi-pound quantities of marijuana and kilogram quantities of cocaine from a Jamaican woman called "Sheila."

3.    On or about October 12, 1988, NORTHROP, Amendola, and others stored approximately one pound of marijuana and one ounce of cocaine in NORTHROP's van parked at 37 Bradley Avenue, East Haven, Connecticut.

- 3 -

4.   On or about October 12, 1988, NORTHROP maintained records relating to his drug trafficking organization at his residence, 34 Harmac Drive, East Haven, Connecticut.

5.   Between in or about December 1988 and in or about March 1990, NORTHROP, Amendola, and others regularly flew to Phoenix, Arizona and El Paso, Texas to purchase multi-pound quantities of marijuana for distribution in Connecticut.

6.   At various times relevant to this Indictment, NORTHROP, Amendola, and others maintained locations to store marijuana and cocaine in the New Haven area of Connecticut, including the trunks of unregistered cars, an apartment at Building 3, Apartment 16, Blue Cliff Hills Apartments, New Haven; Hidden Quarry, New Haven; Apartment 14A, Thompson Gardens, East Haven; a condominium at 515 Emerson Drive, Branford; 135 North Taylor Avenue, Norwalk; and Apartment 1R, 294 Quinnipiac Avenue, New Haven.

7.   At various times relevant to this Indictment, NORTHROP, Amendola, and others used aliases, that is, names other than their own in travelling to buy cocaine and marijuana, such as when staying at motels and flying on airlines.

8.   At various times relevant to this Indictment, NORTHROP, Amendola, and others possessed and used paging devices, also called "beepers," so that they could contact one another and so that drug customers could contact them to order marijuana and cocaine.

- 4 -

9.   Between in or about April 1989 and on or about June 22, 1989, NORTHROP, Amendola, and others made a pipe bomb at Northrop's house at 34 Harmac Drive, East Haven, Connecticut that was to be used to kill John Finnimore who NORTHROP suspected had provided police with information about his drug trafficking organization.

10.   On or about April 7, 1989, a person visited a gun store in North Branford, Connecticut with NORTHROP and purchased two 9 millimeter pistols.

11.   On or about December 19, 1989, pursuant to NORTHROP's instructions, three persons flew from El Paso, Texas to Hartford, Connecticut carrying approximately 200 pounds of marijuana in their luggage that they later distributed in Connecticut.

12.   On or about December 20, 1989, at Amendola's residence at 346 High Street, East Haven, Connecticut, NORTHROP, Amendola and four persons repackaged the marijuana described in overt act eleven.

13.   In or about January or February 1990, NORTHROP invested approximately $100,000 in United States currency, which was drug trafficking proceeds, to establish a company called Marble and Granite Network of America ("MAGNA") located at 100 Airport Road, Hartford, Connecticut.

14.   On or about March 4, 1990, pursuant to NORTHROP's instructions, three other persons attempted to fly from El Paso, Texas to Hartford, Connecticut with approximately 270 pounds of

- 5 -

marijuana concealed inside six suitcases.

15.  On or about August 9, 1990, a person flew from Bradley International Airport in Connecticut to Phoenix, Arizona to purchase marijuana.

16.  In or about November 1990, Amendola and another person purchased between 18 and 26 pounds of marijuana in Mexico and attempted to bring the marijuana to Connecticut for distribution.

17.  On or about December 4, 1990, NORTHROP rented a red Jeep Cherokee automobile from an automobile dealership in Derby, Connecticut.  Amendola and another person drove the rented Jeep from Connecticut to Chihuahua, Mexico and traded the Jeep for approximately 60 pounds of marijuana.  Amendola, after losing approximately 50 pounds of marijuana while crossing the Rio Grande River, arranged for 10 pounds of marijuana to be transported to and later distributed in Connecticut.

18.  On or about December 9, 1990, NORTHROP falsely reported to the police that the rented Jeep Cherokee had been stolen from a movie theater parking lot in North Haven, Connecticut.

19.  Beginning in or about January 1991, NORTHROP maintained" an apartment located at 601 Mesa Hills Drive, El Paso, Texas.

20.  In or about February 1991, a person transported 30 pounds of marijuana on a bus from El Paso, Texas to New York City.  Amendola picked up the marijuana in New York City and transported it to Connecticut where it was distributed.

- 6 -

21. In or about February 1991, NORTHROP and Amendola drove to Mexico and traded a rented 1990 Ford truck plus $1,000 for approximately 30 pounds of marijuana that was later transported to and distributed in Connecticut.

22. On or about February 16, 1991, a coconspirator crossed the border from Mexico into El Paso, Texas with approximately nine pounds of marijuana.

23. On or about March 18, 1991, a person falsely reported to a rental agency that the rented 1990 Ford truck had been stolen.

24. In or about April 1991, NORTHROP purchased between 50 and 90 pounds of marijuana in Mexico. NORTHROP then bribed a corrupt United States border guard, who allowed the marijuana to enter the United States. The marijuana was flown to New York City where Amendola retrieved it and took it to Connecticut and it was later distributed.

25. Between in or about April 1991 and in or about October 1991, NORTHROP transported multi-pound loads of marijuana into the United States from Mexico. NORTHROP bribed a corrupt United States border guard to allow the vehicles containing marijuana to cross the border without being inspected.

26. On or about October 3, 1991, NORTHROP opened and used a safe deposit box at First City, Texas, a bank located at 690 Sunland Park, El Paso, Texas.

- 7 -

27.  On or about October 14, 1991, NORTHROP and three other persons purchased over 400 pounds of marijuana in Mexico.  After the car containing the marijuana was stopped by the Mexican Federale Police, NORTHROP attempted to bribe the police and was arrested.

28.  On or about October 18, 1991, Amendola sent $60,000 in United States currency by Federal Express to an attorney in El Paso, Texas to be used in obtaining NORTHROP's release from jail in Mexico.

29.  On or about November 15, 1991, pursuant to Northrop's instructions, two persons transported approximately 34 pounds of marijuana from El Paso, Texas to New Mexico.

30.  On or about November 25, 1991, a coconspirator possessed approximately 15 pounds of marijuana at an airport terminal in El Paso, Texas.

31.  On or about February 1, 1992, NORTHROP was at Bradley International Airport in Connecticut, wearing a beeper and carrying an airline ticket issued to "Mike Miller" for a flight to El Paso, Texas.

32.  In or about February 1992, NORTHROP arranged for approximately 16 pounds of marijuana to be sent by United States Express Mail to a person at 14A Herman Street, West Haven, Connecticut from El Paso, Texas.

33.  In or about February 1992, NORTHROP arranged for approximately 16 pounds of marijuana to be sent by United States

- 8 -

Express Mail to a person at 285 Seaside Avenue, Apartment 4, Milford, Connecticut from El Paso, Texas.

34.  On or about March 2, 1992, NORTHROP possessed approximately nine ounces of cocaine.

35.  After March 2, 1992, NORTHROP attempted to hire a person to kill Jonathan Allen who NORTHROP suspected had provided police with information about his drug trafficking organization.

36.  After March 2, 1992, NORTHROP attempted to hire a person to kill Officer Keith Mello who arrested him in connection with his possessing approximately nine ounces of cocaine.

37.  From in or about late March 1992 to on or about April 7, 1992, NORTHROP travelled to El Paso, Texas and arranged for the purchase of marijuana.

38.  On or about April 4, 1992, while discussing the need to use new people in his drug trafficking organization, NORTHROP told Amendola "We gonna probably have to reorganize everything . . . you know what I mean?  We have to get some fresh new faces."

39.  On or about April 7, 1992, NORTHROP spoke with an undercover United States Customs Service agent, explaining that in exchange for receiving money he could provide a corrupt United States border guard who would permit marijuana to enter the United States from Mexico.

All in violation of Title 21, United States Code, Section 846.

- 10 -

## COUNT THREE
(21 U.S.C. § 848)

From in or about the Summer of 1988 and continuing to on or about April 7, 1992, the exact dates unknown to the Grand Jury, in the District of Connecticut and elsewhere,

### AARON NORTHROP

defendant herein, unlawfully, willfully, knowingly, and intentionally engaged in a continuing criminal enterprise in that he committed violations of Subchapters I and II of Chapter 13, Title 21, United States Code, including the violations alleged in count one and the overt acts in count one, and in count two of this Indictment, which counts and overt acts are incorporated by reference herein, as well as other violations of said statutes, all of which violations were part of a continuing series of violations of said statutes undertaken by NORTHROP in concert with at least five other persons with respect to whom NORTHROP occupied a position of organizer, supervisor, and manager and from which continuing series of violations he obtained substantial income and resources.

All in violations of Title 21, United States Code, Section 848.

- 11 -

<u>COUNT FOUR</u>
(26 U.S.C. §§ 5861(c) and (f))

From in or after April 1989 to in or about June 22, 1989,

the exact dates unknown to the Grand Jury, in the District of

Connecticut,

AARON NORTHROP,

defendant herein, together with and aided and abetted by Anthony

Amendola, who is not charged as a defendant herein, and others

known and unknown to the Grand Jury, knowingly made and possessed

a firearm, that is, a destructive device, as those terms are

defined in Title 26, United States Code, Section 5845(a), (f),

and (i), consisting of black powder, ignitors, a length of PVC

pipe, a servo unit, a remote control receiver, and other

components and that was made in violation of Chapter 53, Title

26, United States Code.

In violation of Title 26, United States Code, Sections 5822

and 5861(c) and (f), and Title 18, United States Code, Section 2.

- 12 -

## COUNT FIVE
### (18 U.S.C. § 1958)

From on or about March 26, 1992 until on or about April 7, 1992, in the District of Connecticut and elsewhere,

AARON NORTHROP,

defendant herein, used and caused others to use facilities in interstate commerce, namely, interstate telephone facilities and a paging device between both Connecticut and Nevada and Connecticut and Texas, with intent that a murder of Jonathan Allen, a person NORTHROP suspected was a police informant, be committed in violation of the laws of the State of Connecticut, as consideration for a promise and agreement to pay money.

In violation of Title 18, United States Code, Section 1958.

- 13 -

<u>COUNT SIX</u>
(18 U.S.C. § 1958)

From on or about March 26, 1992 until on or about April 7, 1992, in the District of Connecticut and elsewhere,

AARON NORTHROP,

defendant herein, used and caused another to use facilities in interstate commerce, namely, interstate telephone facilities and a paging device between both Connecticut and Nevada and Connecticut and Texas, with intent that a murder of Keith Mello, a law enforcement officer with the Milford, Connecticut Police Department, be committed in violation of the laws of the State of Connecticut, as consideration for a promise and agreement to pay money.

In violation of Title 18, United States Code, Section 1958.

- 14 -

## COUNT SEVEN
### (18 U.S.C. § 401(3))

From on or about June 11, 1992 to on or about July 21, 1992, in the District of Connecticut,

### AARON NORTHROP,

defendant herein, knowingly disobeyed and resisted an order and command of the United States District Court for the District of Connecticut, in that on June 11, 1992 he appeared before the Court at which time the Court ordered and commanded him to provide handwriting exemplars, and he thereafter refused to provide and did not provide the ordered handwriting exemplars.

In violation of Title 18, United States Code, Section 401(3).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
ALBERT S. DABROWSKI
UNITED STATES ATTORNEY


_____
JOHN H. DURHAM
ASSISTANT UNITED STATES ATTORNEY

_____
ROBERT J. DEVLIN, JR.
ASSISTANT UNITED STATES ATTORNEY

_____
PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY

I hereby certify that the foregoing is a true copy of the original document on file. Date: _____

KEVIN F. ROWE
Clerk

By_____
Deputy Clerk